OPINION OF THE COURT
Samuel G. Fredman, J.
Defendant Power Authority of the State of New York (PASNY) has cross-moved for multiple forms of relief including an order striking plaintiffs third cause of action seeking an award of punitive damages against this defendant.
*564 In order to resolve the pending motion and cross motion, it is necessary to determine whether punitive damages properly may be awarded against defendant PASNY, an issue of first impression. Plaintiff sets forth the basis of its claims against this defendant as follows:
"14. Plaintiff claims that power authority was actively and grossly negligent in, inter alla, failing to maintain proper security at Indian Point, failing to adequately supervise personnel, including but not limited to casey a. turner. As a direct result of this negligence, the motor vehicle accident out of which this lawsuit arose occurred. It is alleged that as a result of the mismanagement of Defendant’s nuclear facility, and its gross negligence which placed the general public, as well as those on the premises, at risk, Plaintiff edward moskowitz was injured. Defendant power authority caused and allowed casey a. turner to be operating a motor vehicle on the premises in a drunken condition.
"15. In addition, it is claimed that defendant casey a. turner, deceased, was unfit to be working at Indian Point 3, particularly in the capacity of a driver. Upon information and belief, defendant power authority, by and through its employees and/or agents, was aware of the unfitness of mr. turner for the position in which he was placed.”
Plaintiff argues that defendant PASNY is not the State itself, nor a political subdivision thereof, and that no public tax monies or other State funds are used to finance its operation, so that the exemption from punitive damage awards afforded to the State and its political subdivisions does not apply to PASNY. In opposition, this defendant contends that the relevant case law authority establishes that it should not be subject to a punitive damages award, so that plaintiff’s claim in this regard must be dismissed. Plaintiff’s counsel and PASNY’s attorney both rely upon two Court of Appeals decisions, namely, Sharapata v Town of Islip (56 NY2d 332) and Clark-Fitzpatrick, Inc. v Long Is. R. R. Co. (70 NY2d 382).
In Sharapata (supra), "a matter of first impression”, it was held that the Court of Claims Act’s "waiver of sovereign immunity * * * does not permit punitive damages to be assessed against the State or its political subdivisions” (Sharapata v Town of Islip, supra, at 334).
In the later Clark-Fitzpatrick decision (supra), the Court of Appeals reasoning commenced with a discussion of the Sharapata holding, and proceeded to discuss the status of the defendant in the matter before it.
*565 The Court’s holding is set forth in this language: "Applying this standard to the instant appeal, we hold, in light of the essential public function served by defendant in providing commuter transportation and the public source of much of its funding, that defendant should receive the same immunity from punitive damages as do the State and its political subdivisions. This conclusion proceeds inexorably from an examination of the enabling legislation creating defendant’s parent organization, the MTA, and the purposes articulated therein of furthering the development of commuter services essential to the economic health of the State (Public Authorities Law § 1263, L 1965, ch 324). Those purposes are specified by statute as being 'in all respects for the benefit of the people of the state of New York’, and the Legislature further commanded that 'the authority shall be regarded as performing an essential governmental function’ (Public Authorities Law § 1264 [2]).” (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., supra, at 387 [emphasis added].)
This court, in conducting the required "particularized inquiry” herein, is impressed with defendant PASNY’s arguments based upon the legislation creating this entity, namely, Public Authorities Law, article 5, title 1. This defendant also submits the following compelling argument which plaintiff does not refute: "the power authority is not in the business of profit making. It is run for the purpose of providing the cheapest and most efficient energy possible to the people of New York State and to continue to strive technologically to advance the ability to provide electricity to its people. It is run by five trustees who are appointed by the Governor with the advice and consent of the Senate whose salaries are determined by statute. In selling its power to municipalities and political subdivisions, the prices must represent the cost of generation, plus capital and operating charges, plus a fair cost of transmission. The statute explicitly provides that it must be at the lowest possible price with the rates to consumers based on accurate cost data. Any cost savings realized in the production or delivery of electricity by the power authority shall be passed to the consumers. (Public Authorities Law Section 1005 and 1001-A)” (emphasis added).
Plaintiff asserts that defendant PASNY is not funded with tax monies or funds from public sources, and that its "projects are financed through the sale of bonds to private investors”. However, PASNY, a "corporate municipal instrumentality of the state”, was formed to exercise "governmental and public *566 powers” as to "a matter of public concern to the people” of New York, it is not a profit-making enterprise, and any savings realized from its operations must be "passed to the consumers” of the power generated. The fact that "Consolidated Edison, a private entity, operates part of Indian Point side by side with” defendant PASNY does not buttress plaintiffs arguments, but actually undermines them since PAS-NY’s enabling legislation establishes that it is an entity distinct from a typical corporation such as Con Edison, but analogous, for these purposes, to the Long Island Rail Road Company.
The fact remains that the public users of PASNY’s energy ultimately would bear the costs of any punitive damages award assessed against this defendant, although the public, in theory, also would benefit from the punishment and future deterrent effect of such an award, which is the precise result sought to be avoided in the Clark-Fitzpatrick matter, as defendant PASNY’s counsel argues.
The court has concluded that given defendant PASNY’s performance of an essential governmental function in a nonprofit setting as a "corporate municipal instrumentality”, and the impact upon the public were the court to rule otherwise, an award of punitive damages properly may not be assessed against this defendant in the situation presented herein.
It is ordered that defendant PASNY’s cross motion is granted in that plaintiffs claims for punitive damages and gross negligence justifying the imposition of such damages against this defendant are stricken.